**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LARRY D. HYSTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 01-2296-KHV** |
| **BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Larry D. Hysten brings suit against his employer, the Burlington Northern Santa Fe Railway Company ("BNSF"), alleging that it terminated his employment for filing a claim under the Federal Employer's Liability Act ("FELA"). This matter is before the Court on defendant's Motion To Dismiss (Doc. #45) and Motion For Summary Judgment (Doc. #47), both filed February 3, 2005. For reasons stated below, defendant's motions are overruled.

**Factual Background**

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.

Plaintiff began working for BNSF in August of 1977. On April 2, 1998, plaintiff reported to his supervisor that he was experiencing pain in his back. Between April 2 and April 14, upon repeated question by his supervisors, plaintiff said that he did not know whether his back pain was work-related. Plaintiff never changed his position to claim a work-related injury, and defendant conducted no formal

investigation or disciplinary proceedings into the matter.

As of April 6, 1999 – a year later – plaintiff was working at the Topeka shop facility, repairing and maintaining air brakes on freight cars. When plaintiff awoke on April 7, he experienced pain in his lower back. He did not go to work that morning and did not call BNSF to report his absence. On April 9, plaintiff told BNSF that because of pain, he could not work from April 7 through 9. He said that he did not know the exact nature or cause of his injury, however, and that he could not identify his injury as work-related.

On April 8, 1999, plaintiff saw Dr. Desai at St. Francis Medical Center. At this visit, Dr. Desai placed plaintiff on limited duty. On April 12, plaintiff sought treatment at the Tennant Chiropractic Center. The treating physician requested that plaintiff be excused from work for two days. When plaintiff delivered the doctor's note to BNSF, he told Pamela Morse, a clerk in the Topeka System Maintenance Terminal, that he did not know exactly what had caused his injury. Morse told plaintiff that he needed to fill out leave-of-absence forms so his employment would not be terminated. BNSF supervisors filled out a personal injury report sheet regarding plaintiff's injury. Plaintiff later filled out a BNSF accident analysis form which required him to state exactly how he had been injured on the job. Although plaintiff was uncertain as to the exact nature and cause of his injury, he noted that the injury could have been sustained while he was putting on an air hose or an air test device. Plaintiff continued to seek medical attention, and BNSF gave him a leave of absence until his next scheduled medical appointment on April 21.

On May 3, 1999, BNSF allowed plaintiff to return to work. Even though plaintiff was still unaware whether his injury was work-related, BNSF medical personnel placed plaintiff in the Transitional Work Program ("TWP") from May 3 to May 14. The TWP is designed to accommodate employees who have

sustained injuries which are not work-related. If plaintiff had reported that he had been injured on duty, he would not have been eligible for TWP.

On May 17, 1999, plaintiff returned to full duty work. The same day, plaintiff met with Monte Johnson, the superintendent of the Topeka System Maintenance Terminal, and Jim Hall, General Equipment Supervisor. During this meeting, Johnson asked plaintiff to declare whether his injury was work-related. Plaintiff declined and stated that he was trying to get a doctor to tell him where the injury had occurred. He also stated that the injury could have been caused by work under a freight car.

During a meeting on May 21, 1999, Johnson told plaintiff that he had to declare whether his injury was work-related.[1] Plaintiff again explained that he did not know what injury he had sustained and could not declare whether it was work-related. To protect his ability to receive FELA benefits, however, plaintiff felt that he had no option but to declare that the injury was work-related. While plaintiff completed paperwork regarding his injury, Johnson told him (and also gave him written notice) that BNSF was going to conduct a formal investigation whether plaintiff had violated rules and regulations which required him to promptly report a work-related injury. See Exhibit 10 to Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48) filed February 3, 2005. On June 1, 1999, plaintiff spoke with John Suminski, a BNSF claims manager, about filing a FELA claim for what he now considered to be a work-related injury. Plaintiff, however, never filed any claim.

---

[1] In a deposition, Johnson testified that he usually did not take an active role in trying to determine the nature of an employee's injury and that it was not his practice to call employees in to ask point blank if they were claiming an on-the-job injury. See Deposition of Monte B. Johnson, Exhibit 2 to Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48) filed February 3, 2005, at 90, 151-52.

On June 14, 1999, BNSF held the formal investigation. Johnson conducted the meeting and determined that plaintiff's employment should be terminated for violating rules S-28.2.5, S-28.2.7 and S-28.13. Rule S-28.2.5 states as follows:

> All cases of personal injury, while on duty or on company property, must be immediately reported to the proper manager and the prescribed form completed.
>
> If after the initial report of an injury, employees seek medical attention for a work-related injury, they must contact the appropriate supervisor and update their status.
>
> A personal injury that occurs while off duty that will in any way affect employee performance of duties must be reported to the proper manager as soon as possible. The injured employee must also complete the prescribed written form before returning to service.

Mechanical/P7M Safety Rules Policies – January 1999, Exhibit 10 to Memorandum In Support Of Defendant's Motion. Rule S-28.2.7 states that "[e]mployees must not withhold information, or fail to give all the facts to those authorized to receive information regarding unusual events, accidents, personal injuries, or rule violations." Id. Rule S-28.13 requires employees to

> report to and comply with instructions from supervisors who have the proper jurisdiction. Employees will comply with instructions issued by managers of various departments when the instructions apply to their duties.

Id.

Plaintiff did not attend the meeting and later told Johnson that he had forgotten about it. On July 12, 1999, based on Johnson's recommendation, BNSF terminated plaintiff's employment.

On January 3, 2000, plaintiff filed suit against BNSF and Johnson, alleging that in terminating his employment, in violation of 42 U.S.C. § 1981, defendants had retaliated against him for filing a race discrimination claim. Plaintiff also alleged that in violation of state law, defendants had wrongfully

discharged him in retaliation for filing an on-duty injury claim. The Honorable G. Thomas VanBebber granted summary judgment for defendants on plaintiff's federal claim and declined to exercise supplemental jurisdiction over his state law claim. See Hysten v. Burlington N. & Santa Fe R.R. Co., No. 00-2002-GTV, 2000 WL 1871889 (D. Kan. Dec. 6, 2000).

While his original federal lawsuit was pending, in April of 2000, the BNSF Public Law Board reviewed plaintiff's case and reinstated his employment. It noted that plaintiff had waited 46 days to formally report his injury and that the evidence was "insufficient to warrant reasonable conclusion that he obtained [the injury] while on duty." Exhibit 16 to Memorandum In Support Of Defendant's Motion (Doc. #48). The board concluded that plaintiff's injury report was "clearly in violation of the Carrier's Rules with which he is charged," but it determined that because he was a long-term employee, he receive "one final chance to prove his worth to [BNSF]." Id. It therefore reinstated plaintiff with seniority but without back pay.

After Judge VanBebber dismissed plaintiff's state law retaliatory discharge claim, plaintiff re-filed it in state court. Citing diversity jurisdiction, defendant removed the case to this court on June 14, 2000.[2]

On March 26, 2002, this Court granted defendant's motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. Plaintiff appealed, and the Tenth Circuit certified two questions to the Kansas Supreme Court. On March 19, 2004, the Kansas Supreme Court responded to those questions, holding that (1) Kansas law recognizes a common law tort of retaliatory discharge for the exercise of rights under FELA, and (2) the remedies available to aggrieved employees under the Railway Labor Act ("RLA"), 45 U.S.C.A.

---

[2] Plaintiff's first case in federal court had asserted federal question jurisdiction.

§ 151 et seq., are not adequate alternative remedies. Hysten v. Burlington N. & Santa Fe Ry. Co., 108 P.3d 437 (Kan. 2004). Based on these holdings, the Tenth Circuit reversed this Court's order of dismissal and remanded for further proceedings. Hysten v. Burlington N. & Santa Fe Ry. Co., 98 Fed. Appx. 764, 2004 WL 966286 (10th Cir. May 6, 2004).

On February 3, 2005, defendant reinstated its dispositive motions. Defendant contends that it is entitled to judgment as a matter of law because (1) the RLA preempts plaintiff's claim; (2) plaintiff cannot show a prima facie case of retaliation; and (3) plaintiff cannot show that its legitimate non-retaliatory reason for termination was pretextual.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th

Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## Analysis

### I. Preemption

Defendant argues that the RLA preempts plaintiff's retaliation claim because any analysis of its duty to plaintiff requires an interpretation of the collective bargaining agreement ("CBA") which defines the extent of its duties to union employees. Plaintiff disagrees, arguing that his claim requires a purely factual inquiry into defendant's motive for termination and that no interpretation of the CBA is needed.

In Andrews v. Louisville & Nashville Railroad Co., 406 U.S. 320 (1972), the United States Supreme Court noted that the RLA created the National Railroad Adjustment Board ("NRAB") to serve as the exclusive mechanism for resolving "minor" disputes, i.e. disputes which are grounded in CBAs

between railroads and their employees. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 256 (1994); Fry v. Airline Pilots Ass'n Int'l, 88 F.3d 831, 835 (10th Cir. 1996). The RLA will preempt an employee's state law claim of wrongful termination if the CBA is the only source of the employee's claim. See Hawaiian Airlines, Inc., 512 U.S. at 257-58. In Hawaiian Airlines, defendant had a state law obligation – aside from any rights in the CBA – to refrain from discharging plaintiff for whistleblowing. Id. at 258. Defendant argued that to determine whether it discharged plaintiff for just cause, the court had to interpret the meaning of "just cause" under the CBA and that the RLA therefore preempted plaintiff's state law claim. The Supreme Court disagreed, id. at 266, stating that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 261 n.8 (citations omitted).

Defendant relies on Garley v. Sandia Corp., 236 F.3d 1200 (10th Cir. 2001), for the proposition that state law claims are preempted when they require a determination whether plaintiff was discharged for just cause under a CBA. In Garley, plaintiff alleged that his supervisor falsely accused him of time card fraud and initiated an investigation which led to his discharge. Id. at 1203-04. The dispute arose because plaintiff was entitled to paid absence to fulfill his duties as union steward. Id. at 1203. Through union grievance proceedings and binding arbitration, defendant agreed to reinstate plaintiff with full back pay, benefits and seniority. Id. at 1204. Later, however, defendant denied plaintiff's previous security clearance – without which opportunities for advancement were nil – and refused to honor its agreement with regard to back pay, retirement funds and reinstatement to plaintiff's previous work station. Id. at 1205. Plaintiff claimed that defendant took these actions because he had filed a union grievance. The district court concluded that the RLA preempted plaintiff's state law claims for civil conspiracy, defamation, breach of

implied contract and intentional infliction of emotional distress, because to determine whether defendant had acted properly, the court had to analyze CBA provisions which dealt with treatment of employees on union business. Id. at 1206. The district court held that the RLA also preempted plaintiff's state law claims for retaliation and breach of the duty of good faith and fair dealing because these claims required a determination whether reinstatement (as defined by the CBA) required reinstatement to the same work station with the same security clearance. Id.

On appeal, the Tenth Circuit agreed that the RLA preempted plaintiff's claims of defamation, breach of implied contract, intentional infliction of emotional distress (to the extent plaintiff's claims arose from conduct which led to his termination) and breach of the duty of good faith and fair dealing. The Tenth Circuit held that the RLA did not preempt plaintiff's two remaining claims, for civil conspiracy and retaliation. Plaintiff's civil conspiracy claim was not preempted because the focus of that claim was analytically distinct from the question whether the CBA authorized defendant's actions. Id. at 1212. Plaintiff's retaliation claim – that defendant withheld back pay and retirement funds, reassigned him to a different work station and took away his security clearance in retaliation for filing a union grievance – was not preempted because the retaliation claim did not require the court to consider plaintiff's rights and obligations under the CBA. Id. at 1213. In that regard, the Tenth Circuit stated as follows:

> As we explained in Jarvis v. Nobel/Sysco Food Services Co., 985 F.2d 1419, 1427 (10th Cir. 1993), in holding that a retaliatory discharge claim was not preempted, "[s]o long as the state law cause of action is concerned not with the employer's contractual rights to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply." The Supreme Court itself recognized in Lingle that litigating a state law retaliatory discharge claim presents purely factual questions pertaining to the "conduct of the employee and the conduct and motivation of the employer," and that neither required "a court to interpret any term of a collective-bargaining agreement." Lingle [v. Norge Div. of Magic Chef, Inc.], 486 U.S.

> [399,] 407, 108 S. Ct. 1877 [(1988)] . . . . Consequently, "[e]ven if the employee violated the employer's rules, giving the employer 'just cause' to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." Davies v. American Airlines, Inc., 971 F.2d 463, 466 (10th Cir. 1992) (citations omitted).

Id.

Defendant argues that plaintiff's claim requires construction of an employer's rights and obligations under the CBA. Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48) at 22 (citing Garley, 236 F.3d at 1214)). Defendant, however, mischaracterizes plaintiff's claim. Plaintiff does not argue that defendant violated his rights under the CBA or that defendant failed to perform its obligations under the CBA.[3] Instead, plaintiff argues that defendant terminated his employment in retaliation for his pursuit of rights under FELA. To resolve this claim, the trier of fact must make a factual inquiry into the motive behind plaintiff's termination. This case implicates the CBA only to the extent that defendant may have been entitled to terminate plaintiff's employment under the CBA; it does not answer the question whether the employer's motivation was the exercise of rights under the CBA or retaliation. Hawaiian Airlines, Inc. and Garley teach that RLA preemption does not arise in these circumstances. See Marshall v. TRW, Inc., Reda Pump Div., 900 F.2d 1517, 1521 (10th Cir. 1990) (basic issue is whether discharge was retaliatory; no need to interpret CBA).

## II. Prima Facie Case And Pretext

Plaintiff alleges that defendant terminated his employment for attempting to file a claim under FELA. Defendant argues that plaintiff cannot establish a prima facie case of retaliatory discharge because he has

---

[3] Indeed, plaintiff addressed those complaints through the grievance procedure delineated in the CBA, and plaintiff was ultimately reinstated to his position.

no evidence of a causal connection between his dismissal and his possible claim for FELA benefits. Defendant also argues that as a matter of law, plaintiff cannot show that its legitimate, non-retaliatory reason for termination was pretextual. Plaintiff responds that the temporal proximity between his declaration that the injury was work-related and BNSF's initiation of a formal investigation establishes the causal connection. Plaintiff also argues that a genuine issue of material fact on the issue of pretext precludes summary judgment.

When analyzing state-law retaliatory discharge claims, federal courts in Kansas apply the burden-shifting approach used in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Robinson v. Wilson Concrete Co., 913 F. Supp. 1476, 1483 n.2 (D. Kan. 1996); Ramirez v. IBP, Inc., 913 F. Supp. 1421, 1429 (D. Kan. 1995). To establish a prima facie case of retaliatory discharge, plaintiff must show that (1) he filed a claim for FELA benefits or sustained an injury for which he might assert a future claim for benefits; (2) BNSF knew of plaintiff's FELA claim or that plaintiff had sustained a work-related injury for which he might file a future claim for benefits; (3) plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected activity or injury and the adverse employment action. See Sanjuan v. IBP, Inc., 160 F.3d 1291, 1298 (10th Cir. 1998). Defendant concedes that plaintiff can establish the first three elements. See Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48) at 30. Defendant contends that plaintiff cannot show any casual connection between a potential FELA claim and the termination of his employment. Plaintiff responds that the close temporal proximity between the termination and his statement that the injury was work-related (thus giving notice of a potential FELA claim) satisfies the fourth element.

To show a causal connection, plaintiff must demonstrate that "the individual or individuals who

actually undertook the alleged retaliatory acts were aware or should have been aware of plaintiff's participation in the protected activity." Foster v. AlliedSignal, Inc., 293 F.3d 1187, 1193 (10th Cir. 2002). A causal connection may be demonstrated by evidence such as protected conduct closely followed by adverse action. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997). When adverse action is not closely connected in time to protected conduct, plaintiff must provide additional evidence to establish the causation element of a prima facie case. See id. Here, plaintiff has shown that defendant initiated the investigation (which led to his termination) immediately after he stated that he had a job-related injury. Furthermore, the individual who presided over the formal investigation was the individual to whom plaintiff reported that injury. These facts are sufficient to establish the causal-connection element of a prima facie case.

Under McDonnell Douglas, once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for its actions. See Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1116 (10th Cir. 2001). If defendant articulates a facially legitimate reason, the burden shifts back to plaintiff to present evidence that defendant's proffered reason is pretextual, that is, "unworthy of belief." Id. at 1120. Here, defendant argues that it terminated plaintiff's employment because he violated company policy in reporting his injury. If true, this reason constitutes a legitimate nondiscriminatory reason.

To survive summary judgment, plaintiff must produce evidence that defendant terminated his employment because he suffered a work-related injury for which he might claim FELA benefits. See Conner, 121 F.3d at 1396. Plaintiff contends that when viewed in totality, the following circumstantial evidence raises a genuine issue of material fact whether defendant's reason was pretextual: (1) close

temporal proximity between plaintiff's statement and the termination of his employment; (2) defendant's failure to conduct a formal investigation of his back injury in April of 1998; (3) Johnson's involvement in determining whether plaintiff had sustained injury on the job; and (4) Johnson's failure to consider plaintiff's explanations, on May 17 and May 21, why he did not earlier state whether his injury was work-related.

As noted above, temporal proximity between protected activity and termination of employment may give rise to an inference of retaliation and may be probative evidence of a retaliatory motive. See id. at 1398. Temporal proximity is sufficient to establish the causal connection element of a prima facie case, but is not sufficient – standing alone – to raise a genuine issue of pretext. Annett v. Univ. of Kan., 371 F.3d 1233 (10th Cir. 2004); Pastran v. K-Mart Corp., 210 F.3d 1201 (10th Cir. 2000); Vigil v. Colo. Dep't of Higher Educ., 1999 WL 407479 (10th Cir. June 21, 1999) (unpublished opinion) (temporal proximity of adverse employment action may cast doubt on defendant's termination justification but is not dispositive of pretext analysis). In Annett, the Tenth Circuit expressly declined to allow very close temporal proximity to operate as a proxy for the more demanding evidentiary requirement in the pretext analysis. 371 F.3d at 1241. In cases where plaintiff survives summary judgment, he or she typically shows more than temporal proximity after defendant has proffered a legitimate nonretaliatory reason for an adverse employment action. See, e.g., Sanjuan, 160 F.3d 1291 (evidence of pretext shown through temporal proximity, defendant's "cost per injury" goals and accident-free incentive programs and plaintiff's testimony regarding mistreatment); McClurg v. GTECH Corp., 61 F. Supp.2d 1150, 1164 (D. Kan. 1999) (issue of pretext established by temporal proximity of less than two months, mention of workers' compensation claim in termination meeting, defendant's decision not to forward medical bill for payment and termination of employee after error on first attempt to type in new computer program command); Austin v. Haaker, 76

F. Supp.2d 1213 (D. Kan. 1999) (temporal proximity established causal connection; ambiguity in employment agreement created genuine issue of material fact); Chaparro v. IBP, Inc., 873 F. Supp. 1465 (D. Kan. 1995) (evidence of temporal proximity, defendant's refusal to excuse absence despite doctor's note, change of absences from excused to unexcused, assignment of employee to job that employer knew employee could not perform). In cases where temporal proximity alone is offered as evidence of pretext, courts have typically granted summary judgment in favor of defendant. See Pacheco v. Whiting Farms, Inc., 365 F.3d 1199 (10th Cir. 2004) (summary judgment affirmed where no evidence of pretext except adverse employment action within two months of protected activity); Lewis v. Oklahoma ex rel. Bd. of Regents, 42 Fed. Appx. 160, 2002 WL 1316810 (10th Cir. June 18, 2002) (unpublished opinion) (summary judgment affirmed where temporal proximity shown but other evidence did not support inference of pretext); Conner, 121 F.3d 1390, 1396 (10th Cir. 1997) (granting summary judgment where no evidence of pretext aside from temporal proximity); Robinson v. Wilson Concrete Co., 913 F. Supp. 1476 (D. Kan. 1996) (timing of termination alone insufficient to show pretext).

Evidence of pretext may include prior treatment of plaintiff. See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.), cert. denied, 528 U.S. 815 (1999). Plaintiff notes that he had sustained a back injury one year earlier; that at that time, despite pressure from supervisors to do so, he could not declare whether his injury had occurred on the job; and that defendant did not formally investigate that incident – let alone terminate his employment. Plaintiff contends that a reasonable jury could infer retaliation from his later unfavorable treatment. In that case, however, plaintiff did not abruptly change his story about whether his injury was work-related, and he never claimed that his injury was work-related. That incident raised no issue whether plaintiff had failed to

promptly and accurately report an on-the-job injury, and it does not tend to show that defendant's explanation is pretextual.

Plaintiff may also show pretext through disturbing procedural irregularities, including "evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). Plaintiff offers evidence of two alleged irregularities to support an inference of retaliation. First, plaintiff notes that Johnson did not typically take an active role in inquiring whether an employee had sustained a work-related injury. Second, plaintiff notes that usually, Johnson did not directly ask employees whether they intended to claim an injury as on-duty or off-duty. The circumstances surrounding plaintiff's injury were unusual, however, and no reasonable jury would find that the bare facts of Johnson's involvement were a "disturbing procedural irregularity." See Hysten, 2000 WL 1871889, at *6.

Pretext can also be shown through weaknesses, implausibilities, inconsistencies, incoherencies or contractions in the employer's proffered legitimate reasons, such that a reasonable factfinder could rationally find them unworthy of credence. Perez v. United Air Lines, Inc., 362 F. Supp.2d 1230, 1242 (D. Colo. 2005). Here, on July 12, 1999, defendant informed plaintiff that it had terminated his employment for "violation of Rules S-28.2.5 Reporting . . . Rule S-28.2.7 Furnishing Information, and S-28.13 Reporting and Complying with Instructions of the Mechanical/P&M Safety Rules Policies, January 1999." Exhibit 14 to Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48). Plaintiff argues that defendant's explanation is unworthy of credence because (1) he did not violate company rules by his inability to declare how he sustained injury; and (2) Johnson refused to consider personal meetings

with plaintiff on May 17 and May 21, 1999, at which plaintiff explained why he could not positively identify where his back injury had occurred.

Plaintiff misses the mark with these arguments. Plaintiff does not deny that he violated the work rules and, indeed, the BNSF Public Law Board found that by waiting 46 days to report a work-related injury and making a claim which was based on insufficient evidence of any work relationship, plaintiff was "clearly" in violation of applicable work rules. Nothing suggests that Johnson believed otherwise. Furthermore, plaintiff does not allege that defendant offered inconsistent reasons for termination or failed to follow its own protocol for investigating and terminating his employment. Instead, plaintiff claims that defendant's stated reason for terminating his employment is inconsistent with his own stated reason for violating the work rules. In fact, defendant has clearly and consistently stated one reason for terminating plaintiff's employment – it believed that plaintiff had violated company policy and procedure in reporting his back injury. The record shows that when plaintiff changed his claim to allege that his injury was work-related, defendant notified him that it intended to investigate possible reporting violations. See Investigation Notice Letter, Exhibit 11 to Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48). Defendant followed through by conducting the investigation, and the resulting recommendations were consistent with the reasons offered for the investigation in the notification letter. The record reveals no weaknesses, implausibilities, inconsistencies, incoherencies or contractions in defendant's stated reasons for terminating plaintiff's employment.

When evaluating pretext, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004); Bullington v. United Air Lines,

Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Furthermore, the Court's role is to prevent unlawful employment practices, not to second guess employers' business judgments. Simms, 165 F.3d at 1329. Here, the only fact which might support an inference of retaliatory motive is the close connection in time between plaintiff's report of a work-related injury and his termination. The other events cited by plaintiff, even considered together, are insufficient to create a genuine issue of material fact as to pretext.

The Tenth Circuit has clearly stated in multiple opinions that temporal proximity gives rise to an inference of retaliation but that it is not sufficient – standing alone – to raise a genuine issue of pretext. An arguable exception is Foster v. AlliedSignal, 293 F.3d 1187 (10th Cir. 2002). To the extent that opinion implies that temporal proximity is sufficient for purposes of the pretext analysis, it would appear to be inconsistent with both prior and subsequent Tenth Circuit opinions. See Annett, 371 F.3d at 1233; Pastran, 210 F.3d at 1201. In Foster, plaintiff suffered a work-related injury and did not report to work for several days. 293 F.3d at 1191. She later filed a workers' compensation claim, and the employer fired her nine days later, id. at 1191-92, allegedly for violating attendance policy. Plaintiff filed suit, claiming that the employer had retaliated against her for filing a workers' compensation claim, in violation of Kansas law. The district court granted summary judgment in favor of defendant, and the Tenth Circuit reversed. In doing so, it stated as follows:

> In order to affirm summary judgment for AlliedSignal, we must concluded that Foster "failed to produce any evidence from which a reasonable inference could be drawn" that AlliedSignal's proffered reasons for her firing were pretextual. Particularly given that "[c]lose proximity in time may provide some probative evidence of retaliatory intent," we cannot conclude that Foster has failed to meet her burden at the summary judgment stage.

Id. at 1196 (citations omitted). The Tenth Circuit emphasized that in addition to temporal proximity, plaintiff

had presented evidence that (1) her absences were due to a work-related injury, and (2) company personnel either knew or should have known the absences were work-related. Id. at 1195-96. The latter factors seem to merely reiterate two elements of plaintiff's prima facie case which were not at issue in Foster. Therefore it is difficult to ascertain what evidence, in addition to temporal proximity and the other elements of her prima facie case, allowed plaintiff to escape summary judgment. This Court cannot fully reconcile Foster with Annett and Pastran.

Here, plaintiff shows no evidence of pretext except temporal proximity. Even when viewed in its totality, plaintiff's evidence of pretext is weak and, but for Foster, the Court would find that it does not raise a genuine issue of material fact. Based on Foster, however, the Court finds that defendant is not entitled to summary judgment.

**III. Motion To Dismiss**

Defendant raises the same issues in its motion to dismiss as it raises in its summary judgment motion. The Court need not address these issues separately. Defendant's motion to dismiss is overruled as moot.

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment (Doc. #47) filed February 3, 2005 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Dismiss (Doc. #45) filed February 3, 2005 be and hereby is **OVERRULED AS MOOT**.

Dated this 10th day of June, 2005 at Kansas City, Kansas.

/s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge